**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

In re:                                               )
                                                     )
LARRY ALAN CHALMERS, JR. and                         )          Case No. 10-31195
BETH ANN CHALMERS,                                   )
                                                     )
          Debtors.                                   )

### MEMORANDUM ORDER ON AGENCY ASSETS

The matter before the Court in this Chapter 7 case is the Motion filed by Liberty Bank asking the Court to compel the Chapter 7 trustee, Patricia Brown, to turn over to the Bank certain moneys that she has realized from the liquidation of the assets of Chalmers Insurance Agency, Inc. The Court conducted a hearing on the motion on November 17, 2011, and invited counsel for the Trustee and the Bank to submit post-hearing briefs, which have now been received and reviewed.

The facts are relatively straightforward. Liberty Bank is owed $110,397.85 pursuant to a promissory note and security agreements executed by Chalmers Insurance Agency ("Agency") on November 25, 2008. The security agreements grant the Bank a security interest in basically all of the Agency's assets, and specifically include the Agency's accounts, accounts receivable, and contract rights. The Trustee has not challenged the validity or perfection of the Bank's lien, but she does challenge its scope.

Larry Alan Chalmers, Jr., and his wife, Beth Ann Chambers, filed their Chapter 7 bankruptcy petition on October 11, 2010. More than two years before filing the bankruptcy, on September 1, 2008, Larry, the 100% shareholder of the Agency, sold the Agency's book of business to another insurance agency, Beimdiek Insurance Agency, Inc. Under the "Consulting-Producer Agreement" entered into to effect this purchase of assets, Beimdiek agreed to pay the Chalmers Agency $10,278.00 a month for three years, with a final payment of $11,969.97 in August 2011. Larry Chalmers was to continue his work as an employee of the Chalmers Insurance Agency, thereby maintaining the value of the book of business that Beimdiek had purchased and also producing an income for Chalmers personally.

Though she was the legal owner of all of the stock of the Chalmers Insurance Agency after the bankruptcy was filed, the Trustee did nothing to take over the Agency until approximately June 2011, when she began to liquidate the Agency's assets and intercepted the last three monthly

payments from Beimdiek, totaling $42,803.97.   Chalmers continued to work for the Agency and to draw a monthly salary until June 2011, when the Trustee took over the business and, in effect, fired Chalmers by refusing to continue paying his salary.  In addition to intercepting the payments from Beimdiek, the Trustee is holding $3,172.56 in net proceeds from the sale of an automobile owned by the Agency.

The Bank, relying on its perfected security interest in the Agency's assets, particularly its contract rights, claims that it is entitled to the $42,803.97 paid by Beimdiek to the Agency pursuant to the Consulting-Producer Agreement entered into in 2008.  The Trustee claims that the Beimdiek payments are for Larry Chalmers's personal services for his post-petition work in selling insurance and helping to maintain the book of business that the Chalmers Agency sold to the Beimdiek Agency.

First, the Trustee's argument is directly contrary to the facts.  The payments made by Beimdiek to the Chalmers Agency were made pursuant to the Consulting-Producer Agreement and represented the contractual payments in partial payment for the book of business purchased from the Chalmers Agency.  It is true that Larry Chalmers was expected to personally work to maintain the book of business, but he was compensated up until June 2011 as an employee of the Chalmers Insurance Agency, Inc.  There has been no evidence at any time, in any of the hearings in this case, that Chalmers was employed by Beimdiek.  Moreover, if the payments did, indeed, represent compensation payable to Larry Chalmers personally, Larry Chalmers would be entitled to those payments as post-petition compensation for his employment; the Trustee would not be entitled to them.[1]

Second, the Bank has a validly perfected, blanket security interest in all of the assets of the Agency, including inventory, all present and future accounts receivable, chattel paper, contract rights, and general intangibles.  Even if the Trustee could somehow successfully argue that the contractual payments under the Consulting-Producer Agreement were not "contract rights," the Bank would nevertheless have a security interest superior to the Trustee in the cash received as a general intangible.[2]

---

[1] 11 U.S.C. § 541(a)(6).

[2] Mo. Rev. Stat. § 400.9-102(a)(42).

Moreover, the Bank has a superior right to the $3,172.36 in proceeds being held by the Trustee from the sale of the Agency's automobile, as a general intangible under the security agreements.

The Court, quite candidly, has been mystified by the Trustee's conduct in this case. When the Chalmerses filed bankruptcy, the Trustee became the legal owner of the stock of the Agency. As the sole shareholder, the Trustee had the right to take over the Agency and, if she chose, continue it in operation. This did not give her the right, however, to liquidate all of the assets of the Agency and disregard the security interest of the Bank in the Agency's assets. Contrary to the Trustee's apparent beliefs, she did not own the assets of the Agency, she owned only the stock of the corporation.

Because the Agency has debts far in excess of the value of its property and assets – in fact, the evidence suggests that there aren't enough assets to even satisfy the Bank's $110,397.85 debt – the stock held by the Trustee is worthless. A determination of the value of the stock should have been made early in the case, and once that determination was made the stock should have been abandoned as having no value. The Trustee and her counsel have wasted a great deal of time and energy pursuing a worthless asset.

Therefore, for the reasons set out above, the Bank is entitled to the $43,802.97 in contract payments received from Beimdiek, and the Trustee is directed to turn that money over to the Bank. In addition, the Bank is entitled to the $3,172.36 in net proceeds from the sale of the Agency's automobile, and the Court would urge the Trustee to turn those funds over to the Bank without the necessity of further proceedings.

**SO ORDERED** this 14th day of December 2011.

/s/ Jerry W. Venters
United States Bankruptcy Judge

Parties to receive electronic notice